NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| G&S LIVINGSTON REALTY, INC., <br><br> Plaintiff, <br><br> v. <br><br> CVS PHARMACY, INC., <br><br> Defendant. | Civil Action No. 10-00303 (SDW) <br><br><br> **OPINION** <br><br><br> December 21, 2011 |

**WIGENTON**, District Judge.

Before the Court are the following motions: 1) plaintiff G&S Livingston Realty, Inc.'s ("G&S") motion for summary judgment ("G&S Motion") against defendant CVS Pharmacy, Inc. ("CVS"); and 2) a cross motion for summary judgment filed by CVS ("CVS Motion").

The Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(a)(2). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court 1) **DENIES** the G&S Motion and 2) **GRANTS** in part and **DENIES** in part the CVS Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

The shopping site Livingston Retail Center ("Center") is comprised of 121,000 square feet. (Pl.'s Br. 2.) G&S asserts that the guaranty ("Guaranty") signed by Melville Corporation ("Melville") induced G&S into entering an agreement to lease to Linens 'N Things ("Linens" or "LNT") a 42,500 square foot retail space in the Center (the "Premises") on June 21, 1996 (the

1

"Lease"). (Compl. ¶¶ 6, 9; Pl.'s Br. 2.) The initial term of the Lease was for twenty years, commencing November 26, 1997 and ending January 31, 2018. (Compl. ¶ 7.)

CVS became the successor to Melville. (Compl. ¶ 10.) LNT is now bankrupt, having filed for reorganization under Chapter 11 of the Bankruptcy Code on May 2, 2008. (Compl. ¶ 14; Pl.'s Br. 1.) LNT left the Premises around December 31, 2008, and filed a notice to reject the Lease on December 17, 2008. (Compl. ¶ 15; Pl.'s Br. 19-20.)

On January 8, 2009, G&S demanded that CVS pay past dues owed by LNT in the amount of $236,733. (Compl. ¶ 17.) Pursuant to a settlement agreement and release, on or around February 6, 2009, G&S assigned its claim for past due amounts against LNT to CVS ("Settlement Agreement").[1] (Compl. ¶ 18.) CVS also paid G&S for amounts past due. (CVS Answer to Compl., Affirmative Defenses and Countercl. ("CVS Ans.") – Countercl. ¶ 1.) CVS paid rent for the Premises at the annual minimum rent rate according to the Lease ("Annual Minimum Rent") from January 2009 through December 2009. (Compl. ¶ 20; Pl.'s Br. 5.)

On January 4, 2010, CVS sent a letter to G&S stating that it was terminating the Lease. (Compl. ¶ 21.) On January 7, 2010, G&S responded to CVS: 1) expressing its belief and understanding that CVS was obligated to continue paying costs associated with the Lease pursuant to the Guaranty, and 2) claiming that CVS had no rights under the Lease as LNT rejected it in bankruptcy. (*Id.* ¶ 23.)

---

[1] The Settlement Agreement provides that

> [n]otwithstanding anything to the contrary in this Agreement and except with respect to payments previously made hereunder, CVS reserves all rights to assert, with respect to any future alleged liability, including in connection with the current or any future term of the Lease, that CVS has no obligation of any kind, to G&S or any other person, pursuant to the Lease or Guaranty.

(Certification of Agnes Antonian ("Antonian Cert."), Ex. J, Settlement Agreement and Release, section 6.)

On January 19, 2010, G&S filed a complaint against CVS in this Court. G&S asserts the following causes of action against CVS as a result of CVS's alleged breach of the Guaranty: 1) claims for declaratory judgment that CVS is in material breach and is responsible for all accruing payments and expenses due under the Lease (Count I); 2) breach of contract (Count II); and 3) breach of the duty of good faith and fair dealing (Count III). (*See generally id.*; Pl.'s Br. 14.) G&S claims that the "unpaid rent, Common Area Maintenance ("CAM"), and real estate taxes for the remainder of the Initial Lease Term is approximately $10,838,000 as of January 1, 2010." (Compl. ¶ 8.)

CVS asserts counterclaims against G&S for declaratory relief regarding alternative rent (Count I), declaratory relief regarding termination of the Lease (Count II), breach of contract (Count III), and unjust enrichment (Count IV). (*See generally* CVS Ans.) Further, CVS seeks compensation for the Annual Minimum Rent it paid G&S in 2009 pursuant to the Guaranty in the amount of $807,500.04 ($67,291.67 per month). (*See generally* CVS Ans. – Countercl. ¶¶ 2, 13.)

**LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter, but rather must determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

## DISCUSSION

As there are no genuine issues of material fact in dispute, this matter will be decided on summary judgment.

## G&S CLAIMS

First, G&S argues, in part, that CVS did not have rights under the Lease because the Lease was terminated "by operation of law in 2008 because Linens breached the Lease and abandoned the Premises." (Pl.'s Br. 17.) Thus, G&S argues that neither CVS nor LNT should be able to benefit from LNT's breach of the Lease, or to be more specific, neither should be able to benefit from the provision of the Lease that would have allowed LNT to terminate the Lease. Further, G&S argues that CVS did not assume the Lease or have it assigned to it and that CVS

4

did not perform any of the actions required by a tenant under the lease, other than pay rent (*i.e.* maintenance or marketing to re-lease).[2] (Pl.'s Br. 5, 8, 20.) In contrast, CVS argues that the notice of termination it mailed to G&S on January 4, 2010 ("Notice of Termination") severed the Lease and was effective because G&S violated a co-tenancy provision in section 8.03 of the Lease ("Co-Tenancy Provision"). (*See generally* CVS Ans.; Pl.'s Br. 14.)

    1. *G&S Count I (Declaratory Judgment)*

G&S requests a declaratory judgment that CVS breached the Guaranty and is responsible for all accruing payments and expenses due under the Lease. The Declaratory Judgment Act provides a remedy whereby a federal court "may declare the rights and other legal relations of any interested party seeking such declaration" when there exists a "case of actual controversy." 28 U.S.C. § 2201(a) (2006). The Third Circuit has conveyed that "[i]n order to establish standing and thereby satisfy the case or controversy requirement of Article III, a party requesting a declaratory judgment must allege facts from which it appears there is a *substantial likelihood that he will suffer injury* in the future." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 504 (D.N.J. 2009) (alteration in original) (internal quotation marks omitted) (citing *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008)).

In the instant matter, as discussed below, this Court does not find that CVS breached the Guaranty, and thus, CVS is not required to continue to pay Annual Minimum Rent for the Premises. As such, the G&S Motion with respect to Count I for declaratory judgment will be denied.

---

[2] G&S also claims that it tried to re-lease the Premises as of December 31, 2008 when LNT vacated, and has incurred additional expenses associated with the Premises. (Pl.'s Br. 20.)

### 2. *G&S Count II (Breach of Contract)*

The Court will enforce the terms of a contract that is unambiguous on its face. *Statewide Realty Co. v. Fid. Mgmt. & Research Co.*, 611 A.2d 158, 162 (N.J. Super. Ct. Law Div. 1992). "The interpretation of a contract is a matter of law for the court." *Atl. City Racing Ass'n v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 506 (D.N.J. 2000). The essential elements of a cause of action for breach of contract are "a valid contract, defective performance by defendant, and resulting damages." *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985). In this instance, the parties do not debate whether or not the Guaranty was valid. Instead, the main issues revolve around whether the agreement was breached as a matter of law, and related damages, if any.

In this matter, the Guaranty is governed by the laws of the State of New Jersey and provides that the Guarantor

> guarantees, absolutely and unconditionally, to Landlord the full and prompt performance of all terms, covenants, conditions and agreements to be performed and observed by Tenant under the Lease and any and all amendments, modifications and other instruments relating thereto, whether now or hereafter existing and the full and prompt payment of all damages, costs and expenses which shall at any time be recoverable by Landlord from Tenant by virtue of the Lease . . . .

(*See* Antonian Cert., Ex. B, Guaranty, at 1.) This Court finds that the terms of the Guaranty are not ambiguous.

Generally, when a creditor sues a guarantor but the principal debtor is not named in the action, the guarantor is not entitled to assert the claims of the principal debtor as defenses against the creditor. *See Coldwell Banker Real Estate, LLC v. Plummer & Assocs., Inc.*, No. 09-1313, 2009 WL 3230840, at *2 (D.N.J. Oct. 2, 2009); *see also Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 402 (6th Cir. 2000). The exception to this general principle, is that "[t]he guarantor

may, however, assert the principal's claims in three instances: '(1) the surety has taken an assignment of the claim or the principal has consented to the surety's use of the claim, (2) both principal and surety are joined as defendants, or (3) the principal is insolvent.'" *Coldwell Banker*, 2009 WL 3230840, at *2 (citing *Cont'l Grp., Inc. v. Justice*, 536 F. Supp. 658, 661 (D. Del. 1982)). Further, "[i]t is well established that when the principal is insolvent, the guarantor may set-off the principal's claims against the creditor." *Cont'l Grp., Inc.*, 536 F. Supp. at 661.

In this matter, as LNT filed for bankruptcy, the third requirement of insolvency has been met.[3] (*See* Def.'s Opp'n Br. 7, 14.); *see also Wallace Hardware Co.,* 223 F.3d 382. Thus, CVS as guarantor may assert debtor principal LNT's defenses under the Lease.[4] *See Coldwell Banker*, 2009 WL 3230840, at *2 ( "While it is the general rule that a guarantor may not assert a cause of action belonging to the principal against the principal's creditor, this case falls within one of the recognized exceptions to the rule.").

Section 8.03 of the Lease addresses an alternate agreement for payment by LNT if fewer than two tenants occupying 25,000 square feet are open for business ("Minimum Co-Tenancy"). (*See* Antonian Cert., Ex. C, Lease Agreement, section 8.03; *see also* CVS Ans. – Countercl. ¶ 3.) Further, section 8.03 provides for payment of a lower "Alternative Rent" if the Minimum Co-Tenancy was not satisfied.

---

[3] Notably, section 18.01(b) of the Lease also provides that regardless of expiration or termination of the Lease pursuant to 18.01(a) or by operation of law, LNT would not be relieved of "its liabilities and obligations hereunder, all of which shall survive such expiration, termination or repossession . . . ." (Antonian Cert., Ex. C, Lease Agreement, 18.01(b).) Again, indicating that the Lease did not terminate with rejection in bankruptcy.

[4] The Court notes that G&S emphasizes the differences between guaranty versus surety agreements in cases cited by CVS when arguing that CVS is not entitled exercise section 8.03 to terminate the Lease; yet, G&S refers to other cases that use the terms "guarantor" and "surety" similarly in context when it comes to waiver of rights. (Pl.'s Reply Br. 10-11); *see, e.g., Fireman's Fund Ins. Co. v. Joseph J. Biafore, Inc.*, 526 F.2d 170, 176 (3d Cir. 1975); *Am. Bank of Commerce v. Covolo*, 540 P.2d 1294, 1299 (N.M. 1975). *Wachovia Bank v. Credit Doctor, Inc.*, No. A-5031-09T2, at *18 (N.J. Super. Ct. App. Div. Aug. 31, 2011), a case submitted as a supplement by G&S by letter to the Court dated September 8, 2011, also notes that "[a] surety contract is similar in nature to a guaranty contract." Although there are differences between surety and guarantee agreements, that does not alter this Court's ultimate determination in this instance.

Section 8.03 of the Lease provides, in part, the following:

> [I]f fewer than two (2) tenants occupying the minimum co-tenancy percentage are open for regular business, Tenant shall have the option to pay, as alternative rent in lieu of Annual Minimum Rent, its monthly Gross Sales, as defined in Exhibit I, multiplied by the three percent (3%), such product not to exceed its monthly installment of Annual Minimum Rent, in advance on or before the tenth (10th) day of the calendar month next following the month during which such sales were made ("<u>Alternative Rent</u>").  Tenant shall deliver copies of all sales figures for the Premises for the preceding calendar month on or before the tenth (10th) day of each month.  If such condition persists for a period of twelve (12) consecutive months or more, Tenant shall have the right to cancel and terminate this Lease *upon thirty (30) days notice* to Landlord, such notice to be given at any time prior to the date the condition giving rise to such termination right has been satisfied.

(Antonian Cert., Ex. C, Lease, 8.03 (second emphasis added).)  Thus, CVS argues that it is undisputed that the Minimum Co-Tenancy Provision was not satisfied in 2009 for twelve consecutive months and that CVS should be entitled to terminate the Lease.  On or about December 31, 2008, Circuit City vacated the Center.  As a result, from December 31, 2008, less than two tenants occupied the Minimum Co-Tenancy percentage and were open for regular business for at least twelve consecutive months.  CVS was entitled to invoke the options provided in section 8.03 of the Lease.[5]

Next, G&S argues that even if CVS could enforce the Minimum Co-Tenancy Provision after LNT rejected the Lease in bankruptcy, as no party operated the Premises since 2008, G&S's obligations pursuant to the Lease would be excused by LNT's prior default.  Further, G&S argues that the Alternative Rent provision in the Lease would only apply to an operating tenant as the formula was based on calculating "gross sales." (Pl.'s Br. 20.)  However, section 8.01 of the Lease provides, that "[n]othing contained in this Lease shall be construed as requiring

---

[5] *See In re Flagstaff Realty Assocs.*, 60 F.3d 1031, 1034 (3d Cir. 1995) (internal citation omitted)("'Rejection does not alter the substantive rights of the parties to the lease,' and thus does not alter the continuing vitality of terms affecting the amount of rent . . . .")

Tenant to operate at any time or to continuously operate or otherwise remain open for the conduct of business in the Premises." (Antonian Cert., Ex. C, Lease Agreement, section 8.01.)[6]

As discussed above, CVS was entitled to exercise the option to cancel and terminate the Lease pursuant to section 8.03 once the Minimum Co-Tenancy requirement[7] was not met for twelve consecutive months. In opposition, G&S points to *CVS Pharmacy, Inc. v. Thousand Oaks Marketplace, L.P.*, No. 10-2001, at *5 (C.D. Ca. Aug. 4, 2011); however, that case refers to the California Civil Code, which specifically provides: "if a lessee of real property breaches the lease and abandons the property before the end of the term . . . the lease terminates." Cal. Civ. Code § 1951.2(a) (2010). As such, the California Court rejected CVS's arguments that the lease did not terminate when LNT left the property it rented in that case. While *CVS Pharmacy, Inc. v. Thousand Oaks Marketplace, L.P.* has several similarities with the matter currently before this Court, here the Court may allow CVS to assert the defenses in the Lease, in part, because G&S does not rely on a similar operation of law in New Jersey to address the Lease. *See Thousand Oaks Marketplace, L.P.,* No. 10-2001, at *5 (C.D. Ca. Aug. 4, 2011).

As will be discussed below, CVS provided Notice of Termination via letter on January 4, 2010. (Antonian Cert., Ex. P, Jan. 4, 2010 Letter.) CVS did not breach the Guaranty, and this Court will deny the G&S Motion with regard to CVS's alleged breach of contract.

### 3. G&S Count III (Implied Covenant of Good Faith and Fair Dealing)

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. Sup. Ct. 1997); *see also*

---

[6] "[T]he terms of a guarnt[y] agreement must be read in light of a commercial reality and in accordance with the reasonable expectations of persons in the business community involved in transactions of the type involved." *Wachovia Bank*, No. A-5031-09T2, at *25 (N.J. Super. Ct. App. Div. Aug. 31, 2011) (second alteration in original).

[7] The Center is vacant, and two other tenants exercised their rights to terminate the Lease based on the minimum co-tenancy provision in their leases. (Def.'s Opp'n Br. 8-9.) On or about October 1, 2009, Old Navy, LLC notified G&S that it was terminating its Lease. Subsequently, on January 22, 2010, Borders Group notified G&S that it was terminating its Lease. (*Id.*) On or about March 12, 2010, Borders vacated its space at the Center. (*Id.*)

Restatement (Second) of Contracts § 205 (1981).  "The implied covenant is an independent duty and may be breached even where there is no breach of the contract's express terms."  *Emerson Radio Corp. v. Orion Sales, Inc.*, 80 F. Supp. 2d 307, 311 (D.N.J. 2000) (citing *Sons of Thunder*, 690 A.2d at 588), *rev'd in part on other grounds*, 253 F.3d 159 (3d Cir. 2001).  "New Jersey law also holds that a party to a contract can breach the implied duty of good faith even if that party abides by the express and unambiguous terms of that contract if that party 'acts in bad faith or engages in some other form of inequitable conduct.'"  *Emerson Radio Corp.*, 253 F.3d at 170 (3d Cir. 2001) (quoting *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000)).

G&S does not argue that CVS engaged in inequitable conduct up until the time CVS allegedly terminated the contract.  (*See generally* Compl.)  Rather, G&S asserts that CVS terminated a contract that it did not have the right to terminate, and as a result, violated the implied covenant of good faith and fair dealing.[8]  However, contrary to G&S's assertion, CVS did not "manufacture[] an alleged violation of the Co-Tenancy Provision."  (*See* Pl.'s Br. 16.)  The Lease was terminated in 2010 after the co-tenancy requirement in the Lease had not been met for twelve consecutive months and CVS gave notice.  Subsequently, CVS acted based on the belief that the notice of termination was sufficient.  G&S has not shown that CVS breached the implied covenant of good faith and fair dealing, damaging G&S's rights in the Guaranty.  Notably, CVS did not withhold information or act in a way as to deprive G&S from the deal it made with LNT in the Lease.  *See Sons of Thunder*, 690 A.2d at 587 ("[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.") (internal quotation mark omitted).

---

[8] G&S refers to CVS's lacking or non-existent efforts to market the Premises, but does not provide that CVS ever refused to do so. (Pl.'s Br. 1.)  G&S's claims focus primarily on the balance of rent, CAM and real estate taxes that G&S alleges are owed, and attorneys' fees and expenses for enforcement of the Guaranty.

As this Court has found that CVS could terminate the Lease with the appropriate notice pursuant to the co-tenancy requirement in section 8.03 of the Lease, the Court finds that CVS did not act in bad faith or engage in inequitable conduct. This Court denies the G&S Motion as to the issue of the implied covenant of good faith and fair dealing.

**CVS's COUNTERCLAIMS**

    *1.  CVS Counts I and II (Declaratory Judgments)*

CVS continued to pay rent to G&S in 2009. CVS claims that there were "no outstanding payments due to G&S pursuant to the Lease as of February 9, 2009." (Def.'s Opp'n Br. 6.) CVS argues that it paid rent in 2009, but should not have based on the section 8.03 Alternative Rent provision. CVS sought to end the Lease with the Notice of Termination in 2010 given the co-tenant vacancy. CVS's January 4, 2010 letter served as notice, but according to the terms of section 8.03, which requires thirty days notice for termination, CVS's termination would not have been effective until thirty days later.[9] (*See* Antonian Cert., Ex. C, Lease Agreement, section 8.03.)

CVS's Counterclaims include two requests for declaratory judgment: Count I (declaratory judgment for alternative rent) and Count II (declaratory judgment for termination of the Lease). Based on the discussion above, CVS was entitled to terminate the Lease with appropriate notice; however, termination was upon thirty-days notice, commencing on January 4, 2010. CVS Count I (declaratory judgment for alternative rent) is denied and Count II is decided as provided above.

---

[9] The Notice of Termination was dated January 4, 2010, but stated that "pursuant to Section, 8.03, CVS notifies Landlord that by this Notice, as of January 1, 2010, the Lease is cancelled and terminated without further obligation of CVS." (Antonian Cert., Ex. P, Jan. 4, 2010 Letter, at 1; *see also* Def.'s Reply Br. 26.)

11

### 2. *CVS Counts III (Breach of Contract) and IV (Unjust Enrichment)*

As previously discussed, the Court will enforce the terms of the contract as it is unambiguous on its face. *See Statewide Realty Co.*, 611 A.2d at 162. Section 8.03 of the Lease provided that the Lease could be cancelled or terminated by LNT if the Minimum Co-Tenancy was not maintained for twelve consecutive months or more, "upon thirty (30) days notice to Landlord." (*See* Antonian Cert., Ex. C, Lease Agreement, section 8.03.) While G&S had the option to terminate the Lease after LNT stopped paying, it was up to CVS to provide notice of its intent to terminate or cancel the Lease pursuant to section 8.03. The fact that CVS did not even attempt to pay Alternative Rent prior to January 2010 does not entitle CVS to be reimbursed for the period it did not attempt to exercise options under the Lease. Thus, CVS's breach of contract claim (Count III) will be denied.

Next, for similar reasons, CVS also cannot succeed in its claim against G&S for unjust in enrichment (Count IV). While in certain instances it may be considered unjust enrichment to permit a recipient to retain money "paid because of a mistake" as CVS argues, CVS's payment of the Annual Minimum Rent was not merely a mistake. (Def.'s Opp'n Br. 31 (citing *Winslow, Cohu & Stetson, Inc. v. Skowronek*, 344 A.2d 350, 354 (N.J. Super. Ct. Law Div. 1975)). Further, reimbursing CVS would prejudice G&S unfairly and be inequitable, as G&S relied on the provisions in the Lease, which require the proper calculation and notice of termination to implement the Alternative Rent structure. (Def.'s Reply Br. 25-26.); *see generally Winslow, Cohu & Stetson, Inc.*, 344 A.2d at 354. CVS paid rent until it exercised the option provided in section 8.03 of the Lease. CVS cannot now claim entitlement to Alternative Rent when it did not comply with the other requirements for calculation of such an alternative, pursuant to section 8.03—specifically, providing gross monthly sales figures as directed — or even request it.

**CONCLUSION**

For the reasons set forth above, this Court **DENIES** the G&S Motion.  Further, this Court **GRANTS** the CVS Motion in part, and **DENIES** it in part as follows.  The CVS Motion as it pertains to the CVS counterclaims, Count I (declaratory judgment for alternative rent), Count III (breach of contract), and Count IV (unjust enrichment) are denied; however, the CVS Motion regarding Count II (declaratory judgment for termination of Lease) will be granted to the extent discussed in this Opinion.

s/ Susan D. Wigenton, U.S.D.J.

Orig:        Clerk
cc:          Parties
               Magistrate Judge Arleo